**Richard M. RUDOLPH and Margaret E. Rudolph, Appellants**

v.

**The ZONING HEARING BOARD OF CAMBRIA TOWNSHIP, Township of Cambria, and Matt R. Niebauer.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2003.

Decided Dec. 31, 2003.

Jackie Atherton Bernard, Altoona, for appellants.

Patrick T. Kiniry, Johnstown, for appellee, ZHB of Cambria Township.

Richard M. Corcoran and Dennis Govachini, Ebensburg, for appellee, Township of Cambria.

Kevin D. Persio, Ebensburg, for appellee, M. Niebauer.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and LEADBETTER, Judge, and COHN, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN.

In this appeal, we must decide whether, under a vested rights theory, a commercial landscaping business can operate in a residential zone by virtue of a building permit issued to build a "pole building," and whether or not a landscaping business can qualify as a "home occupation."

Richard M. Rudolph and Margaret E. Rudolph (Rudolphs) appeal from the March 24, 2003 order of the Court of Common Pleas of Cambria County, which affirmed the decision of the Zoning Hearing Board (ZHB) of Cambria Township (Township) to grant permission to Matt R. Niebauer to continue the operation of a commercial landscaping business on the property.

The property in question is located in an R–2 residential district and is part of a cluster of approximately 30 homes that lie about a mile outside the downtown section of the Township. In 1997 Beverly Niebauer owned the property, the east end of which contained a house and a modular home, and the west end of which was vacant.

In 1997 Mrs. Niebauer's son, Todd Niebauer, applied for a permit to construct a pole building, measuring 40' × 56' × 12', on the west end of the property. The application for the building permit contained a section entitled "Proposed use," which had two columns: one with the heading "RESIDENTIAL" and the other with the heading "NONRESIDENTIAL." Each column contained a list of several uses relating to residential and nonresidential development, respectively. Each column also included a line entitled "Other Specify," followed by space for writing in an answer. Todd Niebauer checked the "Other Specify" block under the *residential* column on his application and, in the space provided, wrote "Pole Bldg—Landscaping Business." Todd Niebauer did not check the "Other Specify" block under the non-residential column. The zoning officer indicated that he understood this application to mean that the Niebauers would be using the pole building to store vehicles.[1]

Commercial enterprises are not permitted in this district. Home occupations are permitted, but the owner must first obtain from the Township a certificate authoriz-

---

1. At the hearing below, the zoning officer testified in reference to the 1997 pole building that, "All I know was that there was going to be vehicles parked in there, in that garage." (Transcript (Tr.) of 6/27/02 ZHB Hearing at 66.)

ing the home occupation.[2] Pole buildings are also permitted in R–2 districts.

In conformance with the zoning ordinance, the Township granted a building permit to Mrs. Beverly Niebauer, then the record owner of the property, to build the pole building. The permit did not indicate that the building could be used for a landscaping business, nor for any business but, instead, merely provided that it could be used for "storage." The pole building was constructed in accordance with the permit.

Several months later, in May 1998, Mrs. Niebauer filed a subdivision plan to split the lot into two parcels, one measuring .875 acres (Lot No. 1) containing the two houses, the other measuring 2.875 acres (Lot No. 2) containing only the pole building. The subdivision plan was granted. Shortly thereafter, Mrs. Niebauer conveyed her interest in Lot No. 2 to her sons, Todd Niebauer and Matt Niebauer, but retained her interest in Lot No. 1.

Matt Niebauer utilized the pole building on Lot No. 2 for his landscaping business, by storing equipment and supplies in it.[3] Although the actual landscaping work was conducted off site, the company employees would meet on the property at the start of each day before departing for the day's worksite. While assembled on the property, the employees would typically load equipment and supplies necessary for the day's work onto trucks that were stored on site. The loaded trucks would leave early in the morning and return at the end of the day, at which time they would be unloaded.

Over the course of time, the landscaping business expanded in size. Matt Niebauer hired five employees to assist with the work. None of these employees were family members. As the business grew, the need for materials grew with it, and the business began receiving regular deliveries of landscaping materials several times each month by tractor trailer. Many of these materials, which included stacks of brick pavers, numerous plants, and mounds of mulch and manure, were stored in plain view on the open grounds surrounding the pole building.

The appellants in this case, the Rudolphs, live in the property adjacent to Lot No. 2. On a daily basis, the Rudolphs heard a variety of noises coming from Lot No. 2, including the sounds of the mechanical equipment used to load and unload the materials onto trucks in preparation for the day's landscaping work. In addition to the business-associated noises, the Rudolphs also had to contend with a number of business-related smells emanating from the fertilizer and organic material stored on site.

In May 2002, the Township issued an enforcement notice against Matt Niebauer and Todd Niebauer, as owners of Lot No. 2, for operating a commercial enterprise within the R–2 district, "namely, a landscaping type business ... involving the storage of equipment and other bulk items, i.e. manure, etc. on the premises." (Enforcement Notice, pg. 1). Matt Niebauer, as the operator of the landscaping business, challenged the enforcement notice,

2. Section 801.15 of the Township's zoning ordinance defines a "home occupation" as: "Any occupation customarily carried on in a dwelling unit or in a building accessory to a dwelling unit which is clearly incidental and secondary to the use of the building for dwelling purposes, and which does not change the character thereof."

3. As noted, at the time of the application for the pole building, Mrs. Niebauer owned the realty, and Todd Niebauer applied for the permit. Matt Niebauer was the owner of the landscaping business that used the pole building. The record indicates that Todd Niebauer is also a partner in the business.

arguing that he was taking steps to have his landscaping business qualify as a home occupation. Specifically, he asserted that he was going to gain sole ownership of both lots so as to consolidate them.[4] Matt Niebauer explained that, with the consolidation of the two lots, the existing pole building would be on the same property as a residence and that he planned to build a second pole building that would also be used to store landscaping business materials. He further indicated that all aspects of his landscaping business would be conducted within the accessory buildings. The Rudolphs argued that the landscaping business would not qualify as a home occupation.

The ZHB, on a theory different from those argued, concluded that, because the Township issued a building permit in 1997 for a landscaping business on Lot No. 2, Matt Niebauer had a vested right to continue to operate the business. However, the ZHB imposed the following conditions on the operation of the business: 1) Matt Niebauer must become owner of both lots; 2) Matt Niebauer must construct the second accessory building as proposed; 3) only living plant material may be stored outside the storage buildings; 4) odor causing materials may not be stored on the property; 5) the hours of operation must be limited; and 6) parking must be limited to five employee vehicles.[5] The Rudolphs filed an appeal with the common pleas court, which affirmed the ZHB's decision. The Rudolphs now appeal to this Court.[6]

The Rudolphs present three issues on appeal. First, they contend that the record lacks substantial evidence to support the ZHB's conclusion that Matt Niebauer has a vested right to operate the landscaping business. Second, they assert that, despite Matt Niebauer's plans for making it so, the landscaping business would not be a home occupation under the zoning ordinance. Third, the Rudolphs assert that the ZHB erred in allowing Matt Niebauer to use the appeal process to apply for the construction of an additional building. We address these issues seriately.

## VESTED RIGHTS

■ The doctrine of vested rights was fashioned to accomplish fairness when a landowner has relied upon a zoning permit issued by a municipality, where the permit is subsequently determined to be invalid. *Petrosky v. Zoning Board of the Township of Upper Chichester, Delaware County*, 485 Pa. 501, 507, 402 A.2d 1385, 1388 (1979).[7] Matt Niebauer argues that the

4.  The record indicates that on May 29, 2002, Mrs. Niebauer conveyed her interest in Lot No. 1 to Matt Niebauer. At the time of the hearing before the ZHB in the instant matter, this conveyance had not yet been recorded. The record indicates that Matt Niebauer entered into an agreement of sale with Todd Niebauer on May 31, 2002, to acquire Todd Niebauer's interest in Lot No. 2. May 31, 2002 was also the day that Matt Niebauer initiated the instant proceeding before the ZHB. This conveyance had similarly not been recorded by the time of the ZHB hearing.

5.  Restrictions were also placed on the burning of materials on site. Those restrictions are not at issue in this appeal.

6.  Where the trial court receives no additional evidence, our scope of review is whether the ZHB committed an abuse of discretion or an error of law. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). An abuse of discretion will be found only where the ZHB's findings are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

7.  In evaluating a vested rights claim, courts look to five factors to determine whether a property owner has a vested right in a permit:
    (1) due diligence in attempting to comply with the law;

vested rights doctrine is applicable and controlling in this case. The Rudolphs contend, however, that *Petrosky* is distinguishable, and that the ZHB erred in applying the vested rights doctrine. We agree with the Rudolphs that *Petrosky* is distinguishable and that the vested rights doctrine is inapplicable here.

In *Petrosky*, the property owner sought to construct a garage to store trucks, which was a permitted use within the given zoning district. The property owners sought and secured all the necessary zoning, use, and building permits to construct the garage. It was built in complete accordance with the terms of the permits; however, after the garage's completion, it was determined that the permit terms did not comply with zoning ordinance setback requirements. The Supreme Court, finding that the landowner had applied for and obtained *all* the necessary permits, and had complied with the issued permits in constructing the garage, determined that the property owner had a vested right in maintaining the building at its location, despite the fact that the setback provisions had not been met.

The instant case differs from *Petrosky* in many material respects. Although the Cambria Township zoning ordinance authorizes the construction of pole buildings within R–2 districts to store particular items, it does *not* authorize the use of buildings or structures therein for the operation of a commercial enterprise. Additionally, unlike the property owners in *Petrosky*, who, in good faith, actively sought

and obtained all necessary clearances to construct and use the garage, the record reflects that Matt Niebauer made no inquiry into the necessary authorizations. As noted, given the R–2 zoning restrictions, any such inquiry would have revealed that his intended use did not conform to zoning requirements.

Additionally, while the property owners in *Petrosky* complied directly with the terms of the permits issued, Matt Niebauer constructed the pole building in accordance with the permit, but then *expanded* the use in excess of what was granted. Specifically stated, the permit in the case *sub judice* only authorized construction of the pole building, which is not being challenged. The permit did not authorize the operation of a business therefrom. Thus, whereas *Petrosky* focused on the construction of the particular building, this case focuses on the **use** of the pole building, not the construction of it. Matt Niebauer argues that this Court should read into the building permit a use that was not authorized. The permit did not provide for any particular use of the building, and the application specified that the use would be "residential." There is nothing in the record to indicate that the issuance of this permit would or could authorize the operation of a commercial enterprise in this residential zone. Using the phrase "landscaping business" on the pole building application cannot, by itself, provide the foundation for a vested right to operate a commercial enterprise in a residential zone.[8] In short, because there

(2) good faith throughout the proceedings;
(3) expenditure of substantial unrecoverable funds;
(4) expiration *without appeal* of the period during which an appeal could have been taken from the issuance of the permit;
(5) insufficiency of evidence to prove that individual property rights or the public

health, safety or welfare would be adversely affected by the use of the permit.
*Petrosky*, 485 Pa. at 507, 402 A.2d at 1388.

8. Additionally, unlike the landowner in *Petrosky*, Matt Niebauer made no inquiry with Township or zoning officials as to the requirements for operating a landscaping business. Allowing him to benefit now from his choice

was nothing in the permit issued that can be determined to be invalid, application of the vested rights doctrine is inappropriate in this case.[9]

## HOME OCCUPATION

■ The home occupation argument is premised on Matt Niebauer's appeal from the enforcement notice. In his response to the enforcement notice that gave rise to this appeal, he argued that: "Use of real estate as set forth in No. 6 above is a permitted use in an R2 district due to the fact it will qualify as a home occupation pursuant to Section 315, et. seq. and Section 801.15 [of the local zoning ordinance]."[10] (Appeal Notice of Matt R. Niebauer and Todd Niebauer, No. 10). At the hearing conducted pursuant to these appeal documents, Matt Niebauer's counsel confirmed that the home occupation theory formed the basis of the appeal.[11]

We conclude that the operation of the landscaping business does not comply with the Township zoning ordinance for engaging in a home occupation. The zoning ordinance places very clear limitations on conducting a home occupation, and requires that the occupation "be carried on wholly within the principal or accessory structures," (Cambria Township Zoning Ordinance, Section 315.2), that the occupation be conducted "by a member of the family residing in the dwelling unit with not more than one employee who is not part of the family," (*id.*, Section 315.1), that "[o]bjectionable noise, vibration, smoke, dust, odors, heat or glare shall not be produced," (*id.*, Section 315.4), and that a "zoning certificate shall be required" (*id.*, Section 315.6). None of these requirements was met.

First, there is no home on this parcel.[12] The property, Lot No. 2, contains many

not to make an appropriate inquiry with Township officials would stretch the doctrine of vested rights far beyond its intended purpose. This is clearly not a case where Township officials were specifically asked about a use and, in response, replied with incorrect information that was reasonably relied upon by the property owner.

9. As the factual situation presented here is not one, arguably, embracing the doctrine of vested rights, we need not address the five-part test for determining if a party has definitively obtained a vested right derived from an inappropriately granted permit.

10. The notices advertising the hearing only mentioned the home occupation issue, and the presiding officer at the hearing, mirroring the written appeal language, announced the purpose of the hearing to be "to hear testimony on an application ... requesting construction of an accessory building in a home occupation...." (Tr. at 4.)

11. At the hearing, a zoning hearing board member asked Matt Niebauer's counsel, "Now as I understand the appeal then filed by the Niebauers is, they are saying that they are a home occupation and this is an accessory

use to the principal use of the lot. Is that correct [counsel for Matt Niebauer]?", to which counsel responded, "Essentially that is it in a nutshell." (Tr. at 12.) It was only at the close of the hearing, when legal argument was permitted, that counsel, for the first time, raised the issue of vested rights, arguing that Matt Niebauer did not have to comply with the home occupation provisions because he obtained a vested right in a full-fledged landscaping business as evidenced by the language "pole building, landscaping business" that Todd Niebauer had written on the 1997 application. Counsel's argument completely ignores that this language was inserted in the residential column of the use section of the application, and not in the non-residential column. Counsel is, thus, trying to derive a vested right to a commercial enterprise for Matt Niebauer, based upon a request to conduct a landscaping business from a residence.

12. The record shows that Lot No. 2, upon which the pole building was built, was, subsequent to its construction, subdivided in a manner so that the pole building was the only building on the specific lot—the two houses that had previously been part of the same lot now form a second lot distinct from the pole building lot.

things: a dump truck, a skid mover, many potted plants, hundreds of masonry stones and bricks and even a fourteen foot tall mound of manure. It does not, however, contain a home, and has not contained one for several years. We see no basis to expand a home occupation where the property has no home. Matt Niebauer's belated attempt to remedy this deficiency by obtaining ownership of residential Lot No. 1, and merging it with pole building Lot No. 2, does not bring this operation within the ambit of a home occupation. Second, Matt Niebauer acknowledges hiring up to five non-family members to assist with the occupation, which is in conflict with the home occupation requirement that no more than one employee can be from outside the owner's family. Third, significant noise is produced on a daily basis by the use of loading equipment to place materials stored on site upon vehicles used to transport them to the job sites. Significant noise also follows the regular delivery of vast quantities of materials via tractor trailer shipments. This is not a minor operation; it is an operation in which several large-scale vehicles move about on the property on a daily basis. Full-size tractor trailers come onto the property within 100 feet of the neighbor's bedroom window and substantial quantities of materials, some malodorous, are delivered and stored on site. The zoning ordinance does not classify such an operation as a home occupation. Fourth, Matt Niebauer did not obtain a home occupancy zoning certificate as required by the ordinance.

In summary, we do not find that the 1997 application for a building permit authorized the operation of a landscaping business or home occupation on the property.[13] On this basis we reverse the order of the common pleas court.[14]

### ORDER

NOW, December 31, 2003, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is hereby reversed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that Matt R. Niebauer (Niebauer) does not have a vested right to continue operating his landscaping business on Lot No. 2 in Cambria Township's (Township) R–2 zoning district despite the fact that the Township issued a building permit to Niebauer's family to construct a pole building on Lot No. 2 for use in a landscaping business. For the following reasons, I cannot agree.

In 1997, Niebauer's family applied to the Township for a building permit for Lot No. 2. As part of the application, Niebauer's family was required to identify the proposed use of the structure so that the Township could consider that use when

---

13. Assuming, arguendo, that the permit could be interpreted to authorize the operation of a home occupation in the pole building, we would not find any basis upon which to expand that home occupation use or authorize the construction of additional buildings to be used for the landscaping enterprise.

Matt Niebauer attempts to rectify the improper expansion of the business by arguing that, if the new building is permitted, then all the materials can be stored inside, thus, rendering the use consistent with home occupation requirements. However, aside from our public policy concern of allowing Matt Niebauer to benefit from this unauthorized expansion of activities, even with the construction of the proposed building, the landscaping enterprise would still not comply with the other requirements set forth above.

14. Due to our disposition of this case, we need not reach the Rudolphs' third issue, i.e., that the ZHB erred in allowing Matt Niebauer to use the appeal process to apply for the construction of an additional building.

deciding whether to issue the building permit. Niebauer's family stated the proposed use as follows: "Pole Bldg—Landscaping Business." The Township knew that its zoning ordinance did not permit a landscaping business in an R–2 zoning district; nevertheless, the Township issued the building permit. Relying on that building permit, Niebauer's family constructed the pole building and used it in a landscaping business.

In May of 2002, the Township issued an enforcement notice stating that Niebauer's landscaping business was not a permitted use in an R–2 zoning district. Niebauer filed an appeal with the Township's Zoning Hearing Board (ZHB), which determined that Niebauer had a vested right in the continued operation of his landscaping business. However, Niebauer's aunt and uncle, Richard M. Rudolph and Margaret E. Rudolph (Rudolphs), who live on the property adjacent to Lot No. 2, complained that the noise and odors generated by Niebauer's landscaping business adversely affected the enjoyment of their property. To address the Rudolphs' concerns, the ZHB imposed conditions on Niebauer's continued operation of the landscaping business.

The Rudolphs filed an appeal with the Court of Common Pleas of Cambria County (trial court). The trial court agreed with the ZHB that Niebauer had a vested right in the continued operation of the landscaping business, reasoning as follows:

> While we concur [with the Rudolphs] that the issuance of the building permit was not "an issuance of a zoning certificate to operate a landscaping business," *the Township when it issued the building permit had knowledge, at least by implication, that the intended use of the building would be for a landscaping business;* the building permit application is sufficiently clear in this regard.

> *The building was constructed and for four years, the landscaping business was conducted, yet the Township failed to act during this period despite the fact that the use was obviously impermissible under [the] Township's Zoning Ordinance.* As a result, we find, based on the Zoning Hearing Board's Findings of Fact, which we conclude are sufficiently supported by the evidence, that the Township acquiesced to this impermissible use and is now estopped from enforcing the Ordinance against the Niebauers.

(Trial court op. at 7) (emphasis added). Commenting on the ZHB's imposition of conditions on the continued operation of the landscaping business, the trial court stated that the ZHB "is to be commended for its efforts to balance the equities involved in this matter." (Trial court op. at 8.)

I agree with the ZHB and the trial court. In *Petrosky v. Zoning Hearing Board*, 485 Pa. 501, 507, 402 A.2d 1385, 1388 (1979) (quoting *Commonwealth of Pennsylvania, Department of Environmental Resources v. Flynn*, 21 Pa.Cmwlth. 264, 344 A.2d 720, 724–25 (1975)), our supreme court stated:

> Ryan, in his scholarly work, discusses the applicability of the vested right doctrine to situations where a municipality has erroneously issued a building permit. His conclusion ... seems to be that after the appeal period has expired and the owner has incurred significant non-recoverable costs in reliance on the permit, the owner's good faith reliance on the permit should afford him a vested right to complete the work, albeit the permit was issued in error.

Our supreme court then identified five factors that must be weighed in determining whether one has acquired vested rights as the result of government issued permits:

(1) due diligence in attempting to comply with the law; (2) good faith throughout the proceedings; (3) the expenditure of substantial unrecoverable funds; (4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit; (5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit. *Id.*

With respect to Niebauer's vested right to continue operating his landscaping business, the ZHB made the following five findings of fact:

19. [Niebauer is] exercising due diligence by attempting to comply with the ordinance by proposing to conduct all the landscaping operation within the confines of two accessory buildings.

20. [Niebauer is] making a good faith effort to comply with the requirements of the zoning ordinance.

21. Since the application for the issuance of building permit No. 2014–1977, [Niebauer has] expended substantial unrecoverable funds and ha[s] been operating a landscaping business on the property.

22. No evidence was presented that anyone appealed the issuance of permit no. 2014 issued September 14, 1997 and any applicable appeal period has now expired.

23. Insufficient evidence was presented to prove that individual property rights or the public health, safety or welfare are adversely affected by the use of the permit for a landscaping business.

(ZHB's Findings of Fact, Nos. 19–23.) I submit that it was reasonable for the ZHB to make these findings from the evidence in the record; therefore, the record contains substantial evidence to support these findings. Based on these findings, I conclude, as the ZHB and the trial court concluded, that Niebauer has a vested right to continue operating his landscaping business. *Id.*

Although this court's scope of review requires a determination as to whether the ZHB's findings of fact are supported by substantial evidence, the majority completely ignores Findings of Fact, Nos. 19–23. Moreover, incredibly, the majority states that it is not necessary to address the five-part test for determination of a vested right because the "factual situation presented here is not one, arguably, embracing the doctrine of vested rights." (Majority op. at 480 n. 9.) However, the "factual situation" here is the one set forth in Findings of Fact, Nos. 19–23. The ZHB is the fact-finder; those are the facts. *This court has no authority to create a "factual situation" that is contrary to the ZHB's findings.*[1]

I would add that the majority has dismantled the local authorities' equitable solution to a dispute that one witness characterized as "more of a family matter." (R.R. at 91a.) The Township issued the permit, knowing that the building would be

1. The majority states that the vested rights doctrine cannot apply here because the Township's building permit did not provide for any particular use of the building, and the phrase "landscaping business" on the application cannot, by itself, provide the foundation for a vested right to operate a landscaping business. (Majority op. at 479–80.) However, if a township does not approve of the proposed use in a permit application, the township should not issue the permit. Moreover, the vested rights doctrine *never* rests on the permit application "by itself"; as indicated above, there are five factors that form the foundation of the vested rights doctrine.

used in a landscaping business, and the Township had no problem with Niebauer's landscaping business from 1997 to 2002. The Township *still* has no problem with Niebauer's landscaping business, provided that Niebauer gives due consideration to his relatives next door. Although Niebauer has agreed to do so, the majority now has deprived Niebauer of his business without even considering the legal test for a vested right.

For all of these reasons, I would affirm.

Judge SMITH–RIBNER joins this dissent.